UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSH DEWITT     CIVIL ACTION

VERSUS     No. 12-415

FLORIDA MARINE TRANSPORTERS, INC.     SECTION "I"

ORDER AND REASONS

Before the Court is a motion *in limine* filed by defendant, Florida Marine Transporters, Inc., to exclude the testimony and report of plaintiff's expert, Robert E. Borison.[1] Plaintiff, Josh Dewitt, has filed an opposition.[2] For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

*BACKGROUND*

Josh Dewitt ("Dewitt") alleges that on or about September 12, 2011, while employed by Florida Marine Transporters, Inc. ("Florida Marine"), he experienced an accident as a Jones Act seaman aboard the M/V CAPTAIN MARVIN REED which accident resulted in serious painful injuries to his back and other parts of his body.[3] Dewitt contends that he sustained his injury while attempting to untie a barge from a dock.[4] Dewitt contends that the barge wire had been negligently looped underneath the dock itself and strung through the metal crossbeams under the

---

[1] R. Doc. No. 18.

[2] R. Doc. No. 22.

[3] R. Doc. No. 1, ¶¶ III, IV, and V.

[4] R. Doc. No. 22, p. 1.

1

dock without using any type of cavel or tie-off on the dock itself.[5] Dewitt contends that when he was ordered to untie the barge, the improper mooring placed him in an extremely dangerous and difficult situation.[6] Although he claims that he attempted to wake up a fellow deckhand to assist him with the job, Dewitt contends that he was forced to begin the procedure by himself because the deckhand never came to his assistance.[7] Dewitt contends that he struggled to remove the barge wire from the iron cross beams and brackets underneath the dock and that he was injured in the process.[8]

On September 20, 2012, Robert E. Borison ("Borison") submitted an expert report on behalf of Dewitt in which he concludes that improper mooring and supervision caused Dewitt's injuries.[9] Borison states that he has "[o]ver 30 years experience in the fields relating to the exploration, production and transport [sic] of oil and gas and the marine industry."[10] Borison advises that his experience includes working with "production platforms, barges (pipe laying, dredging, drilling, jack ups, lift-boats, spud, supply, deck, oil, tank, etc.), structural, fabrication yards, and vessels/boats (ship, MODU, tug, tow, supply, crew, etc.)."[11] Borison also states that

---

[5] *Id.*

[6] *Id.* at p. 2.

[7] *Id.*

[8] *Id.*

[9] R. Doc. No. 18-3.

[10] *Id.* at p. 2.

[11] *Id.*

2

he has significant experience as a safety supervisor, particularly with respect to the operations of cranes and rigging work procedures.[12]

After reviewing deposition testimony, documentary evidence, and interviewing Dewitt, Borison reached the following conclusions pertaining to this case:

> 1. A contributing cause Mr. Dewitt's accident [sic] was the failure of the crew working opposite of Mr. Dewitt to properly moor the FMT 3043 at Exxon's facility.
>
> 2. A contributing cause of Mr. Dewitt's accident was the failure of Captain Coggins to properly supervise his crew and instruct them not to use a structural member of the facility as a mooring device.
>
> 3. The direct cause of Mr. Dewitt's accident was the failure of Captain Raliegh "Butch" Malicote to assign a sufficient number of personnel to remove the winch cable from around the "I" beam when he became aware of this situation.[13]

Borison also reached his conclusions after noting an "equipment problem" and a "management problem."[14] With respect to the "equipment problem," Borison stated in his report that "[w]ire rope should never be run around an object that has sharp corners as it will damage the wire rope and make it unsafe to use in the future."[15] With respect to the "management problem," Borison identified a "work organization/planning deficiency" in that "[i]t is incumbent upon the captain of a vessel to evaluate the work requirements of his crew and to assign a proper number of crewmembers to safely perform the necessary work."[16]

---

[12] *Id.* at pp. 2-3.

[13] *Id.* at pp. 4-6.

[14] *Id.*

[15] *Id.*

[16] *Id.*

Florida Marine filed this motion *in limine* to exclude Borison's testimony and report.[17] Florida Marine contends that Borison's background does not establish that he has any experience or qualifications regarding towing, fleeting, or mooring, which it asserts are the central maritime activities in this case. Florida Marine also contends that Borison's opinion is not reliable because he reached his conclusions without consultation of any industry regulations, standards, or other field-based literature. Finally, Florida Marine contends that Borison's proposed testimony would not be helpful to a jury capable of reaching the common sense conclusions set forth in his report.

Dewitt responds that Borison's expert testimony is necessary to explain to the jury "the critical factor in this case," which he claims is the manner in which the barge had been improperly secured to the dock.[18] Dewitt argues that the proper manner of tying a barge to a dock will be discussed at length with the jury and that Borison's testimony is needed to explain (1) whether it is a common and accepted practice to use crossbeams underneath a dock to tie off a barge; (2) whether the barge could have been located at a different location so as to avoid the use of the crossbeams; (3) the nature of wires in connection with tying off barges; and (4) all other issues regarding the manner in which the barge was tied to the dock. Dewitt also contends that Borison's testimony will be helpful to a jury considering the weight and characteristics of the 40-50 foot wire he was attempting to lift. Finally, Dewitt contends that the testimony is needed to explain management issues with respect to the roles of the captain and the deckhand in causing his injury.

*STANDARD OF LAW*

---

[17] R. Doc. No. 18.
[18] R. Doc. No. 22.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588, 113 S. Ct. 2786, 2794, 125 L. Ed. 2d 469, 480 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)). Additionally, Rule 702 states that an expert may be qualified based on "knowledge, skill, experience, training, or education." *Hicks*, 389 F.3d at 524. *See also Kumho Tire Co.*, 526 U.S. 137, 151, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) (discussing witnesses whose expertise is based purely on experience). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id. See Daubert,* 509 U.S. at 596.

The United States Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 1174, 143 L. Ed. 2d 238, 249-50 (1999).

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed. Appx. 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'"). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs.,*

*Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note)).

## *DISCUSSION*

Borison states in his report that he has over 30 years of experience working with production platforms, barges, structural fabrication yards, vessels, and boats. Borison also states that he has significant experience as a safety supervisor, with particular emphasis in the areas of crane operations and rigging procedures. Florida Marine contends that that Borison lacks the qualifications necessary to render an expert opinion in this case because his expertise is limited to crane operations and rigging procedures, rather than matters regarding towing, fleeting, or mooring.

The Court agrees that while Borison may be qualified to testify with respect to general maritime safety, crane operations, and certain rigging procedures, it is unclear whether Borison's experience qualifies him to testify as an expert with respect to the proper manner in which to moor a vessel. An examination of Borison's resume does not clearly reflect his qualifications to render an expert opinion in this particular case. The Court will defer ruling on Borison's qualifications until trial. At that time, the parties will have a better opportunity to clarify his qualifications to testify as an expert.

Florida Marine also objects to Borison's testimony on the ground that he reached his conclusions without consultation of any industry regulations, standards, or other field-based

literature.  However, Borison's opinion purports to draw upon his experience and the underlying facts of the case including Dewitt's deposition testimony, documentary evidence, and a personal interview of Dewitt.  "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996).  In this case, Florida Marine's argument concerning the basis for Borison's opinion goes to the weight to be given Borison's testimony and not its admissibility.  *Delta Towing, L.L.C. v. Justrabo*, No. 08-3651, 2009 WL 3763868, at *4 (E.D. La. Nov. 9, 2009) (Africk, J.); *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Finally, Florida Marine contends that Borison's proposed testimony would not be helpful to a jury, which it asserts is capable of reaching the common sense conclusions set forth in his report.  The Court agrees that the vast majority of Borison's opinion is dedicated to conclusions that would not assist the trier of fact.  *See Peters v. Five Star Marine Serv.*, 898 F.2d 448, 449-50 (5th Cir. 1990).  Borison will not be permitted to testify regarding such matters as (1) whether allegedly improper mooring was "a contributing cause" of the accident; (2) whether the alleged failure of Captain Coggins to properly supervise his crew and instruct them not to use a structural member of the facility as a mooring device was "a contributing cause" of the accident; or (3) whether the alleged failure of Captain Malicote to assign a sufficient number of personnel to remove the winch cable from around the "I" beam was "the direct cause" of the accident.  Such testimony "would intrude upon the domain of common sense matters for which the Court requires no expert assistance."  *See Marshall v. Supreme Offshore Servs., Inc.*, No. 10-3198,

2011 WL 6258487, at *2 (E.D. La. Dec. 15, 2011) (Vance, J.); *Hargrave v. Blake Drilling & Workover Co.*, No. 07-985, 2008 WL 2625524, at *2-*3 (E.D. La. Feb. 12, 2008) (Africk, J.); *Thomas v. Global Explorer, LLC*, No. 02-1060, 2003 WL 943645, at *2 (E.D. La. Mar. 3, 2003) (Vance, J.).

.   However, the Court does agree with Dewitt that the manner in which a vessel may be safely moored to a dock would be less than obvious to a lay juror. Should the Court find at trial that Borison has the qualifications to testify as an expert in this particular case, the Court will permit Borison to testify with respect to (1) whether it is a common and accepted practice to use crossbeams underneath a dock to tie off a barge; (2) whether the barge could have been located at a different location so as to avoid the use of the crossbeams; and (3) the proper use and physical characteristics of wires in connection with tying off barges. *See McDowell v. Atlantic Sounding Co.*, No. 11-1879, 2012 WL 1656262, at *2 (E.D. La. May 10, 2012) (Morgan, J.) (finding that Borison's expert testimony concerning the safety standards and proper use of a pneumatic impact wrench on a vessel would assist the trier of fact).

## *CONCLUSION*

For the foregoing reasons,

**IT IS ORDERED** that Florida Marine's motion *in limine* is **GRANTED IN PART** and **DENIED IN PART**.

New Orleans, Louisiana, December 17, 2012.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**